```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF MISSISSIPPI
                          JACKSON DIVISION
```

JAMES L. TOLBERT                                              PLAINTIFF

VS.                                    CIVIL ACTION NO. 3:08CV512TSL-JCS

DENBURY ONSHORE, LLC                                          DEFENDANT


<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on the motion of defendant Denbury Onshore, LLC for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff James L. Tolbert has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion should be granted.

At the time he filed this lawsuit, plaintiff James Tolbert was the owner of a 22-acre tract of land on Holly Bush Road in Rankin County, Mississippi, which was near or adjacent to a CO2 compression plant that has been operated by Denbury since before 2004. Plaintiff bought the subject property in 1996 and maintained it for hunting and recreational purposes, with the thought that he might one day build a house on the property. Plaintiff claims that prior to late 2004 or early 2005, the Denbury plant had never caused him any problems. However, in early 2005, he noticed that a certain one-and-a-half to two-acre area of the property on which there was a particularly nice stand of mature hardwoods was constantly wet, or a bog, and that some of

the trees had begun to die.  Plaintiff investigated and determined that a constant stream of water from Denbury's plant was entering the area from a ditch that had been eroded through his property as a result of water discharged from Denbury's plant.  Plaintiff complained to Denbury, which cut a ditch to divert the water away from the hardwood stand, but it was too late to save the trees.  Plaintiff contends that as a result of ever-increasing volumes of water discharged by Denbury into this ditch, the ditch has become increasingly larger and has killed even more trees along the sides of the ditch.

On March 1, 2007, plaintiff filed suit against Denbury in the County Court of Rankin County, seeking compensation for the trees damaged as a result of Denbury's discharge and the consequent temporary flooding of the hardwood stand.  Two months later, plaintiff voluntarily dismissed that action, and in August 2007, he refiled suit in the Rankin County Chancery Court, seeking not only to recover for the damages caused to the trees but also to enjoin Denbury from further releasing water into the ditch, or stream, that crossed his property.  When Tolbert thereafter amended his complaint in August 2008 to seek damages for the destruction of timber, for diminution in value of the property as a result of Denbury's actions, and for punitive damages and attorneys fees, Denbury removed the case to this court on the basis of diversity jurisdiction.

2

On the very day the case was removed, Tolbert entered into a contract with the Animal Rescue Fund of Mississippi (ARF) to sell the property. The contract provided that ARF would purchase the property for its market value, so long as it appraised for at least $200,000, but that the sale was a "benefit sale": Tolbert would receive $150,000 in cash from ARF and would "donate" to ARF the difference between that $150,000 and the appraised value, so long as the property appraised for at least $200,000. The agreement provided:

> Buyer (ARF) will furnish to Seller at closing a receipt
> for the amount of the donation in the amount of the
> difference between the cash paid of $150,000 and the
> appraised value of not less than $200,000.

As part of the transaction, Tolbert hired a real estate appraiser, David Livingston, who undertook an appraisal of the property to estimate its market value, and who on August 25, 2008 determined the property had a market value of $10,250 an acre, or $228,000 total. Tolbert and ARF closed on the property on September 18, 2008, and consistent with the terms of their agreement, ARF paid $150,000 and Tolbert donated the remainder of the purchase price, $78,000, to ARF.

Shortly thereafter, Denbury filed the present motion for summary judgment, arguing that in view of plaintiff's sale of the property, he no longer has standing to pursue the claim for injunctive relief; he has no standing to seek damages to trees in which he no longer owns an interest; he has no arguable basis for recovering damages for diminution in value, given that he sold the

3

property for more than his expert claims it was worth before the damage alleged to have been caused by Denbury; and finally, he cannot recover punitive damages since he has no compensatory damages and/or because Denbury's conduct does not rise to a level that would support an award of punitive damages. In response to Denbury's motion, plaintiff concedes he no longer may seek injunctive relief and has agreed to dismissal of this claim. He denies summary judgment is otherwise in order. Having considered the parties' arguments, the court concludes that Denbury's position on each of these points is correct.

As Denbury notes in its motion, damage for diminution in value is calculated by determining the difference between the fair market value of the property before the alleged damage, and the fair market value of the property after the alleged damage. See Patterson v. Holleman, 917 So. 2d 125, 132 (Miss. Ct. App. 2005) ("'[I]f the damage to the land is permanent, the measure thereof is usually the difference between the fair market value of the entire tract before the injury and the fair market value after the injury.'") (quoting Harrison v. McMillan, 828 So.2d 756, 770 (Miss. 2002). "This measure of damages is known as the 'before and after' rule." Id. Plaintiff has presented as evidence of the "before" value of the subject property the opinion of his expert, Eustice Raines, who on August 5, 2008 opined that the market value of the property before the damage caused by Denbury's release was $220,000. While Raines further opined that

the market value "after" Denbury's release was $119,000, his opinion in this regard is fatally undermined by the circumstances of plaintiff's actual sale of the property a month later at an appraised value in excess of Raines' "before" market value.  In connection with the sale, plaintiff's appraiser valued the property at $228,000.  Without saying as much, plaintiff insinuates that Livingston artificially inflated the appraisal so that plaintiff could reap the greatest tax benefit from his charitable contribution; but this court cannot assume this is what occurred, or that Livingston's appraisal was anything other than a legitimate valuation of the property.  Simply put, while $78,000 of the sales price was in the form of a donation by plaintiff, the record establishes that plaintiff sold the subject property for its appraised value of $228,000, an "after" value which is obviously greater than the claimed "before" value of $220,000. Accordingly, there was no diminution in value.

Plaintiff has claimed that, in addition to or as an alternative to damages for diminution in value of the property, he is entitled to the cost of restoring the property to its condition prior to the damage by Denbury.  "Restoration damages are appropriately awarded for the destruction of a specific item when 'the thing which is destroyed or injured, although a part of, or attached to, the realty, has a distinct value without reference to the realty on which it stands or from which it grows....'" Patterson, 917 So. 2d at 132 (quoting Bynum v. Mandrel Indus.,

5

Inc., 241 So. 2d 629, 634 (Miss. 1970)). However, while restoration costs can in some cases be an alternative remedy for damage to land, under clear Mississippi law, the cost of restoration is not an available remedy if that cost exceeds the diminution in value of the property. See id. (explaining that "a landowner may recover restoration costs pursuant to this rule only if the cost of restoration is less than the diminution in value of the entire property") (citing Harrison, 828 So. 2d at 770).[1]

Finally, since as is clear from the foregoing that plaintiff cannot establish an issue of fact for trial on the issue of damages, which is an essential element of his claim for relief, it follows that he cannot recover punitive damages from Denbury. See Miss. Code Ann. § 11-1-65 ("If, but only if, an award of compensatory damages has been made against a party, the court shall promptly commence an evidentiary hearing to determine whether punitive damages may be considered by the same trier of fact."); Allen v. R & H Oil and Gas Co., 63 F.3d 1326, 1341 (5th Cir. 1995) ("Under Mississippi law, punitive damages are dependent upon and appurtenant to the existence of a recovery of compensatory damages").

Based on the foregoing, it is ordered that defendant's motion for summary judgment is granted.

---

[1] The court notes that Tolbert alludes in his response to "special damages," such as "annoyance, discomfort ... and inconvenience." The purpose of this reference eludes the court, as plaintiff has made no claim in this case for any such damages.

6

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 13th day of March, 2009.

                                             /s/Tom S. Lee
                                             UNITED STATES DISTRICT JUDGE